UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------x

ROBERT GRAHAM

                              Plaintiff,

        -against-

COMMISSIONER OF SOCIAL SECURITY

                              Defendant.

-----------------------------------------------------------------x

**NOT FOR PUBLICATION**

**MEMORANDUM OF DECISION AND ORDER**

16-CV-142 (LDH)

L<span style="font-variant:small-caps">a</span>S<span style="font-variant:small-caps">hann</span> D<span style="font-variant:small-caps">e</span>A<span style="font-variant:small-caps">rcy</span> H<span style="font-variant:small-caps">all</span>, United States District Judge:

      Plaintiff Robert Graham, proceeding pro se, appeals the decision of Defendant Commissioner of Social Security's (the "Commissioner") denial of his application for disability insurance benefits. Defendant has moved pursuant to Federal Rule of Civil Procedure 12(c) for judgment on the pleadings, requesting that the Court affirm the Commissioner's determination that Plaintiff was not disabled. Defendant's motion is unopposed.

## BACKGROUND

      Plaintiff filed a claim for Social Security disability insurance benefits under Title II of the Social Security Act (the "Act") on August 16, 2012, alleging a disability onset date of May 1, 2003. (Tr. 203-06, 241.)[1] Plaintiff worked as a foreman in an auto repair shop from 1998 until the alleged onset date of his disability. (*Id.* at 34, 66-69.) Plaintiff alleged he was disabled due to depression, arthritis, asthma, diabetes, a left clavicle fracture, hiatal hernia, gallstones, carpal tunnel syndrome, biventricular condition, and foot pain. (*Id.* at 33, 136). Plaintiff's application was denied on January 16, 2013. (*Id.* at 146.) Plaintiff requested a hearing before an

---

[1] Citations to "Tr." refer to the certified copy of the administrative record of proceedings filed by the Commissioner as part of her answer. (ECF No. 9.)

administrative law judge ("ALJ"), which was held on August 28, 2014. (*Id.* at 44-161.) The ALJ issued a decision denying Plaintiff's request for benefits on September 24, 2014. (*Id.* at 134-42.) Plaintiff filed a request for review, which was denied by the Appeals Council on November 18, 2015, making the ALJ's decision final. (*Id.* at 1-6.) The Court assumes the parties' familiarity with the relevant facts pertaining to Plaintiff's medical history.

## STANDARD OF REVIEW

A motion for judgment on the pleadings is reviewed under the same standard as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Bank of New York v. First Millennium*, 607 F.3d 905, 922 (2d Cir. 2010) ("The same standard applicable to Fed. R. Civ. P. 12(b)(6) motions to dismiss applies to Fed. R. Civ. P. 12(c) motions for judgment on the pleadings."). Even where a motion for judgment on the pleadings is unopposed, the Court must still review the entire record and ensure that the moving party is entitled to judgment as a matter of law. *See Martell v. Astrue*, No. 09-cv-1701, 2010 WL 4159383, at *2 n.4 (S.D.N.Y. Oct. 20, 2010) (confirming court's obligation to review entire record in deciding unopposed motion for judgment on the pleadings in social security benefits case); *McDowell v. Comm'r of Soc. Sec.*, No. 08-cv-1783, 2010 WL 5026745, at *1 (E.D.N.Y. Dec. 3, 2010) ("Even where such a motion is unopposed, the court may not grant the motion by default."). Further, when a plaintiff proceeds pro se, the court will read his submissions liberally and "interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (citing *Mikinberg v. Baltic S.S. Co.*, 988 F.2d 327, 330 (2d Cir.1993)).

Under the Social Security Act, a disability claimant may seek judicial review of the Commissioner's decision to deny his application for benefits. 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Felder v. Astrue*, No. 10-cv-5747, 2012 WL 3993594, at *8 (E.D.N.Y. Sept. 11, 2012).

In conducting such review, the Court is tasked only with determining whether the Commissioner's decision is based on correct legal standards and supported by substantial evidence. 42 U.S.C. § 405(g); *see also Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)).

The substantial evidence standard does not require that the Commissioner's decision be supported by a preponderance of the evidence. *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982) ("[A] factual issue in a benefits proceeding need not be resolved in accordance with the preponderance of the evidence . . . ."). Instead, the Commissioner's decision need only be supported by "more than a mere scintilla" of evidence and by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pollard v. Halter*, 377 F.3d 183, 188 (2d Cir. 2004) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must examine the entire record and consider all evidence that could either support or contradict the Commissioner's determination. *See Jones ex. rel. T.J. v. Astrue*, No. 07-cv-4886, 2010 WL 1049283, at *4 (E.D.N.Y. Mar. 17, 2010) (citing *Snell v. Apfel*, 171 F.3d 128, 132 (2d Cir. 1999)), *aff'd sub nom. Jones ex rel. Jones v. Comm'r of Soc. Sec.*, 432 F. App'x 23 (2d Cir. 2011). Still, the Court must defer to the Commissioner's conclusions regarding the weight of conflicting evidence. *Cage v. Comm'r of Social Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) (citing *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998)). If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed. *Ortiz v. Comm'r of Soc. Sec.*, No. 15-cv-3966, 2016 WL 3264162, at *3 (E.D.N.Y. June 14, 2016) (citing 42 U.S.C. § 405(g)). Indeed, if supported by substantial evidence, the Commissioner's findings must be sustained, even if substantial evidence could support a contrary conclusion or where the

Court's independent analysis might differ from the Commissioner's. *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982)); *Anderson v. Sullivan*, 725 F. Supp. 704, 706 (W.D.N.Y. 1989); *Spena v. Heckler*, 587 F. Supp. 1279, 1282 (S.D.N.Y. 1984)).

The Code of Federal Regulations for Social Security (the "Regulations") establishes a sequential five-step process for determining whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)-(h). At the first step, the Commissioner must determine whether the claimant is engaged in substantial gainful activity. *Id.* § 404.1520(b). If not, the Commissioner must proceed to the second step to determine whether the claimant has a severe medically determinable impairment or combination of impairments. *Id.* § 404.1520(c). An impairment is severe if it significantly limits a claimant's abilities to perform "basic work activities." *Id.* § 404.1520(c). If the claimant has a medically determinable severe impairment, the Commissioner will proceed to step three to determine whether any identified severe impairments meet or medically equal those identified in Appendix 1 to the Act. *Id.* § 404.1520(d). Such impairments are per se disabling if a claimant meets the duration requirements of 20 C.F.R. § 404.1509. *Id.*

When evaluating the severity of mental impairments, the Regulations require the ALJ to apply an additional "special technique" at the second and third steps of the review. *See* 20 C.F.R. § 404.1520a(a); *see also Kohler v. Astrue*, 546 F. 3d 260, 265-66 (2d Cir. 2008).[2] *First*, the ALJ must determine whether the claimant has a medically determinable mental impairment.

---

[2] On January 17, 2017, following the date of the ALJ's decision, new regulations came into effect changing the test applied to assess whether a mental impairment is disabling. *See* Evaluation of Mental Impairments, 20 C.F.R. § 404.1520a (2017). The Court applies the Regulations in effect at the time of the ALJ's decision. *See* Revised Med. Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138-01, 66138 n.1 (Sept. 26, 2016) ("We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decisions.").

*See* 20 C.F.R. § 404.1520a(b)(1). *Second*, if such a mental impairment is found, the ALJ must rate the degree of the claimant's functional limitations in light of the impairment(s) in four areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. *Id*. § 404.1520a(c)(3). The ALJ must make "a specific finding as to the degree of limitation in each of the functional areas . . . ." *Id.* § 404.1520a(e)(4). If a claimant's mental impairment is severe, the ALJ will determine whether the impairment meets or medically equals the severity of a listed mental disorder. *Id.* § 404.1520a(d)(2). If an impairment meets or equals an impairment found in a listing, the claimant is disabled. *Id.* § 404.1520(a)(4)(iii). If it does not, the ALJ proceeds to step four of the evaluation process. *Id.* § 404.1520a(d)(3).

If a claimant's impairments are not per se disabling, the ALJ must assess the claimant's ability to work in light of his limitations, otherwise known as his residual functional capacity ("RFC"). *Id.* §§ 404.1520(e), 404.1545(a)(1). Once the claimant's RFC is decided, the Commissioner must undertake to establish whether the claimant's RFC will allow him to perform past relevant work. *Id.* § 404.1520(f). If the claimant's RFC precludes him from performing past relevant work, the Commissioner bears the burden of proving that, given his RFC, age, education, and work experience, the claimant can do other work that exists in significant numbers in the national economy. *Id.* § 404.1512(f). If such work exists, the claimant is not disabled. *Id.* § 404.1520(g)(1).

## DISCUSSION

In determining whether Plaintiff was disabled, the ALJ followed the sequential five-step process. *First*, the ALJ found that Plaintiff was insured through December 31, 2007, and had not engaged in substantial gainful employment since May 1, 2003, the alleged onset date of

Plaintiff's disability. (Tr. 136.) *Second*, the ALJ found the following impairments to be severe: hiatal hernia, diabetes, gastritis, asthma, and a fracture of the clavicle. (*Id.*) *Third*, the ALJ found that none of Plaintiff's severe impairments met or medically equaled the severity of a listing impairment. (*Id.* at 138.) *See* 20 C.F.R. Part 404, Subpart P, App'x 1. *Fourth*, the ALJ determined that Plaintiff had the RFC to perform light work, but Plaintiff "could not climb ladders, ropes, or scaffolds; and could climb ramps and stairs on an occasional basis." (*Id.*) Plaintiff could reach in all directions, including overhead, with his non-dominant left upper extremity on an occasional basis. (*Id.* at 138.) Plaintiff "could not work at jobs containing concentrated exposure to airborne irritants such as fumes, odors, dusts, gases and/or smoke." (*Id.*) *Fifth*, the ALJ determined that Plaintiff was able to perform work as an inspector (Dictionary of Occupational Titles ("DOT") code 733.687-050), a tester of electrical components (DOT code 724.384-010), or a vehicle transporter (DOT code 919.663-010). (Tr. 141-42.) Defendant argues that the ALJ's determination was supported by substantial evidence and should be affirmed. (Def.'s Mot. 18-29, ECF No. 17.)

## I. Treating Physician Rule and Duty to Develop the Record

The "treating physician rule" is a series of regulations set forth in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion. An ALJ is to consider each and every medical opinion in a claimant's administrative record. *See id.* § 404.1527(c). However, an ALJ must generally give the medical opinion of a treating physician "controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence." *Rosa v. Callahan*, 168 F.3d 72, 78-79 (2d Cir. 1999) (citing *Clark*, 143 F.3d at 118); *accord Shaw v. Carter*, 221 F.3d 126, 134 (2d Cir. 2000). The reason for preferring the findings of a treating physician is plain: the treating physician is in a more capable position to provide a

detailed picture of the claimant's impairments than a consultative physician who has seen the claimant in just one individual examination. *See* 20 C.F.R. § 404.1527(c)(2); *Estela-Rivera v. Colvin*, No. 13-cv-5060, 2015 WL 5008250, at *13 (E.D.N.Y. Aug. 20, 2015) (explaining preference for treating source opinions).

In view of the "treating physician rule," an ALJ cannot simply reject outright the report of a treating physician, even where there are gaps in his report. *Rosa v. Callahan*, 168 F.3d at 79 (remanding where, in light of gaps in record, ALJ should have taken steps to obtain additional information from treating physician). Instead, where there are gaps in the administrative record, or inconsistencies in a treating physician's reports, the ALJ bears an affirmative duty to seek out additional information from the treating physician to supplement the record. *See Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508-09 (2d Cir. 2009) (citing *Tejada v. Apfel*, 167 F.3d 770, 774 (2d Cir. 1999)) (ALJ has a duty to "affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding"); *Hartnett v. Apfel*, 21 F. Supp. 2d 217, 221 (E.D.N.Y. 1998) (citing *Clark*, 143 F.3d at 118; *Schaal v. Apfel*, 134 F.3d 496, 505 (2d Cir. 1998); *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996)) ("[I]f an ALJ perceives inconsistencies in a treating physician's reports, the ALJ bears an affirmative duty to seek out more information from the treating physician and to develop the administrative record accordingly.").

### A. Dr. Husain's Mental Impairment and Physical Residual Functional Capacity Questionnaires

In this case, the opinion of a treating physician was encompassed in a mental health impairment questionnaire and a physical residual functional capacity questionnaire, which were completed by Dr. Syed Husain, Plaintiff's treating physician. (Tr. 551-55.) With respect to the mental impairment questionnaire, it is evident that Dr. Husain failed to complete a large portion

7

of the questionnaire or provide details as to his opinions contained therein. (*See e.g.*, *id.* at 553.) Dr. Husain reported that Plaintiff had been diagnosed with insomnia and depression, and although he stated that these conditions could be expected to last twelve months, he failed to provide any detailed findings. (*See id.* at 551, 553.) In response to a question as to how the Plaintiff's impairments could be expected to result in absences from work, Dr. Husain simply noted "[Patient] says disabled." (*Id.* at 554.) In response to a question about whether Plaintiff would have difficulty working, Dr. Husain replied "I don't know." (*Id.*) With respect to functional limitations, Dr. Husain noted that Plaintiff had a moderate limitation with respect to activities of daily living. (*Id.*) With respect to the other categories addressing limitations of (1) social functioning, (2) persistence, pace or concentration, and (3) episodes of decompensation, Dr. Husain wrote he was unable to "evaluate" or "give an opinion." (*Id.*)

In the physical residual functioning capacity questionnaire, Dr. Husain again provided scant details concerning the basis for his opinion. Dr. Husain diagnosed that Plaintiff had the following conditions: hiatal hernia, erosive esophagitis, erectile dysfunction, gastroesophageal reflux disease, hypertension, depression, left clavicle fracture, and insomnia. (Tr. 556.) He reported Plaintiff's symptoms as consisting of epigastric abdominal distention, lack of sleep, fracture pain, and depression. (*Id.*) Dr. Husain noted that Plaintiff could sit and stand/walk for less than two hours, and next to this notation he wrote, "as indicated by [patient]." (*Id.* at 558.) In response to a question that asked whether Plaintiff would have to be absent from work as a result of his impairments or treatment, Dr. Husain wrote, "[Patient] says disabled." (*Id.*)

As a result of the deficiencies in the questionnaires, the ALJ accorded Dr. Husain's opinions contained therein little weight, finding that they were of limited probative value and did not cite objective medical evidence. (Tr. 137-140.) The Court takes no issue with the ALJ's

8

determination that the questionnaires were deficient. However, any inadequacies with the questionnaires did not relieve the ALJ of his obligation to probe further. On the contrary, the Regulations specifically require an ALJ to "'seek additional evidence or clarification from [the claimant's] medical source when the report from [that] medical source . . . does not contain all the necessary information . . . .'" *See Hilsdorf v. Comm'r of Soc. Sec.,* 724 F. Supp. 2d 330, 347-48 (E.D.N.Y. 2010) (quoting 20 C.F.R. § 404.1512(e)(1)). Although Dr. Husain failed to include detailed findings in his assessments of Plaintiff's conditions, this does not mean such support does not exist. *See Clark*, 143 F.3d at 118 (2d Cir. 1998) (remanding for development of the record and recognizing that "[doctor's] failure to include this type of support for the findings in his report does not mean that such support does not exist; he might not have provided this information in the report because he did not know that the ALJ would consider it critical to the disposition of the case"); *accord Falco v. Astrue*, No. 07-cv-1432, 2008 WL 4164108, at *5 (E.D.N.Y. Sept. 5, 2008) (quoting *Rosa v. Callahan*, 168 F.3d at 80).

Rather than seeking additional information as required under the Regulations, the ALJ simply discounted Dr. Husain's opinions and afforded them little weight. This was error. As such, the Court remands with instructions to the ALJ to contact Plaintiff's treating physician to request additional information regarding his opinions as required by the Regulations. Remand is warranted particularly in light of the fact that Dr. Husain reported he had treated Plaintiff since March 2002 (Tr. 556), and because he was Plaintiff's only regular treating physician during the relevant period.

## II. Evidence from Post-Plaintiff's Date Last Insured

The ALJ found that, because Plaintiff's date last insured was December 31, 2007, he was unable to consider evidence of medical impairments from after that date, including the opinions

9

of consultative examiners Drs. Susie Chow and Johanina McCormick.[3] (Tr. 137, 139.) The Court disagrees. Indeed, "[e]vidence bearing upon an applicant's condition subsequent to the [date last insured] . . . is pertinent evidence in that it may disclose the severity and continuity of impairments" prior to the date last insured. *Stewart v. Astrue*, No. 10-cv-3032, 2012 WL 314867, at *9 (E.D.N.Y. Feb. 1, 2012) (quoting *Lisa v. Sec'y of Dep't of Health & Human Servs.*, 940 F.2d 40, 44 (2d Cir. 1991)). This is especially true where, as is the case here, the record from the relevant period is devoid of any information about several of Plaintiff's alleged medical impairments. Courts have recognized that "[t]he absence of contemporaneous medical evidence does not automatically preclude a finding of disability." *Rose v. Barnhart*, No. 01-cv-1645, 2003 WL 1212866, at *5 (S.D.N.Y. Mar. 14, 2003) (remanding to permit ALJ to consider possibility of retrospective testing and diagnoses where plaintiff did not seek treatment until after date last insured). The Court remands with instruction to the ALJ to consider whether evidence from after Plaintiff's date last insured would affect the ALJ's determinations as to the severity of Plaintiff's impairments and whether he was disabled during the relevant period.

---

[3] The ALJ assigned no weight to the opinions of consultative physicians Drs. Chow and McCormick because they were conducted nearly five years after the date last insured. (Tr. 139.) By assigning little weight to the opinions of the consultative physicians *and* Dr. Husain, it appears the ALJ determined Plaintiff's RFC by substituting his own opinion in place of the medical opinions in the record. This was legal error. *See Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013) (citing *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir.1998) (ALJ is not permitted to "arbitrarily substitute [his] own judgment for [a] competent medical opinion")); *Hilsdorf*, 724 F. Supp. 2d. at 347 ("Because an RFC determination is a medical determination, an ALJ who makes an RFC determination in the absence of supporting expert medical opinion has improperly substituted his own opinion for that of a physician, and has committed legal error."). On remand, the ALJ is instructed to rely on medical evidence in the record in support of his determination as to Plaintiff's RFC.

## CONCLUSION

For the aforementioned reasons, Defendant's motion for judgment on the pleadings is denied in its entirety. Pursuant to 42 U.S.C. § 405(g), the Commissioner's decision is remanded for further proceedings and additional findings consistent with this Order. The Clerk of Court is respectfully requested to enter judgment and close this case accordingly.

SO ORDERED:

/s/LDH

LaSHANN DeARCY HALL
United States District Judge

Dated: Brooklyn, New York
March 31, 2017